# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **DONALD J. HUDDLESTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  Civil Action No.  CV-11-S-4329-NW |
| | ) |
| **SUNSHINE MILLS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION AND ORDER DISMISSING FEWER THAN ALL CLAIMS

This case is before the court on defendant's motion to dismiss the First, Third, Fourth, Fifth, and Sixth Claims for Relief in plaintiff's amended complaint.[1] Upon consideration of defendant's motion, the amended complaint, and the parties' briefs, the court concludes that the motion should be granted.

### I. PROCEDURAL HISTORY

Plaintiff, Donald J. Huddleston, who is proceeding *pro se,* filed two separate lawsuits in this court during December of 2011, both of which asserted claims against Sunshine Mills, Inc., his former employer. The first complaint was assigned Civil Action No. 3:11-cv-4271-CLS.[2] That case originally was assigned to United States Magistrate Judge Robert R. Armstrong, but it was reassigned to the undersigned on

---

[1] Doc. no. 12.

[2] *See* doc. no. 1 in Civil Action No. 3:11-cv-4271-CLS.

February 29, 2012. The second complaint filed by plaintiff was assigned Civil Action No. 3:11-cv-4329-CLS (the present case).[3] The complaints in the two cases were identical, but plaintiff attached additional documentation to the complaint filed in the present case. Therefore, the court entered an order on March 5, 2012, dismissing the complaint in the first action filed, Civil Action No. 3:11-cv-4271-CLS, as duplicative, but allowing the present case to proceed.[4] Prior to that date — *i.e.,* on February 24, 2012 — the court had already entered an order in the present case, granting defendant's motion for a more definite statement, and requiring plaintiff to file an amended complaint that set forth in more detail the facts upon which he relied to support his claims, specified the federal statutes upon which he relied, and asserted his claims in separate causes of action. Plaintiff was advised that, even though he was proceeding *pro se,* the court would expect at least basic compliance with all pleading requirements set forth in the Federal Rules of Civil Procedure.[5]

## II. STANDARD OF REVIEW FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a),

---

[3] *See* doc. no. 1.
[4] Doc. no. 2 in Civil Action No. 3:11-cv-4271-CLS.
[5] Doc. no. 10.

which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the

complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

## III. ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Donald J. Huddleston, an African-American male, began working for defendant, Sunshine Mills, Inc., in 2006 as a machine maintenance specialist at the Sunshine Pet Treats facility in Tupelo, Mississippi.[6] He was transferred to a facility in Red Bay, Alabama in April of 2008, where he also performed machine maintenance

---

[6] Doc. no. 11 (Amended Complaint), at ¶ 3.

duties.[7]  Plaintiff received on-site training from other machine maintenance specialists, and he had experience troubleshooting and maintaining industrial machinery.[8]

Terry Childers, the Maintenance Manager at the Red Bay facility, informed plaintiff on August 11, 2010 that he was "disqualified from maintenance for lack of experience & that he should go back to school to get more experience."  Even so, Childers did not fire plaintiff; instead, he allowed plaintiff to return to his former position on the work floor.[9]  Although it is not entirely clear from the allegations of plaintiff's amended complaint, this apparently means that, after August 11, 2010, plaintiff still was employed by defendant, but he no longer worked in maintenance. Childers did not evaluate plaintiff or interview plaintiff's coworkers before forming an opinion about plaintiff's experience level; instead, he "relied on speculation of his own mentality that the plaintiff was not capable or intelligent enough to maintain machinery of the defendant's company because of the fact he was an African American."[10]  Childers subsequently hired a Caucasian ("white") male who had no experience and no higher education to replace plaintiff.[11]  That employee had to ask plaintiff for help in performing his maintenance duties, even though plaintiff no longer

---

[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 8.
[10] *Id.* at ¶¶ 9-10.
[11] *Id.* at ¶ 11.

was a member of the maintenance crew.[12]

On August 28, 2010, plaintiff sent an e-mail to Janeice Gober, defendant's Human Resources Manager, complaining of Childers' decision to reassign him away from the maintenance crew.[13] When Gober did not respond to plaintiff's complaint, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2010.[14]

On August 29, 2010, plaintiff noticed that changes had been made to the time records on his check stub.[15] On December 15, 2010, plaintiff was asked to sign a document acknowledging that the company "would begin altering time," but he refused to do so because the company already had begun making the alterations to his time records.[16] Plaintiff asked to speak to Ms. Gober regarding the document he was asked to sign, but, instead, he was forced to meet with Dave Norden, the Plant Manager, and Royal Witcher, the company's Vice-President, on December 16, 2010.[17] Norden and Witcher again encouraged plaintiff to sign the document addressing changes to time records, and plaintiff once again declined. Plaintiff also stated that

---

[12] Amended Complaint, at ¶ 12.

[13] *Id.* at ¶ 13.

[14] *Id.* at ¶¶ 14-15.

[15] *Id.* at ¶ 17.

[16] *Id.* at ¶ 18.

[17] *Id.* at ¶¶ 19-20.

he had the right to sue the company or turn it in to the Department of Labor. Norden and Witcher signed the document and made a notation that plaintiff refused to sign.[18]

On December 22, 2010, Witcher "abruptly terminated the plaintiff stating that he violated company policy," but he never informed plaintiff which policy he had violated.[19] Plaintiff believes his termination was in retaliation for his statement that he could report the company to the Department of Labor, for his complaints about the company altering employees' time, and for his refusal to sign the document referencing alterations to employee time records.[20]

Plaintiff filed for unemployment benefits from the State of Alabama Department of Industrial Relations ("ADIR") on January 16, 2011.[21] He received a notice from ADIR on February 5, 2011, stating that defendant alleged that plaintiff had been dismissed for misconduct, and inviting plaintiff to file a response to that allegation.[22] After providing additional information, plaintiff received a Notice of Determination from ADIR on February 8, 2011, stating that he would not receive unemployment benefits because he had been discharged from Sunshine Mills for falsification of

---

[18] Amended Complaint, at ¶ 21-22.
[19] *Id.* at ¶ 23.
[20] *Id.* at ¶ 24.
[21] *Id.* at ¶ 26.
[22] *Id.* at ¶ 27.

records and time cards.[23] Plaintiff appealed that decision, and he attended an appeal hearing on June 30, 2011.[24] Defendant did not appear at the hearing.[25] Nevertheless, plaintiff's appeal was denied on July 3, 2011.[26]

## IV. DISCUSSION

Plaintiff's amended complaint contains six "Claims for Relief." Defendant argues that Claims One, Two, Four, Five, and Six should be dismissed.

### A.   Preliminary Matters

Plaintiff appears to be confused about the procedural posture of this case. In his brief, plaintiff states:

> On December 27, 2011, Donald Huddleston (hereinafter referred to as "Plaintiff") filed his original complaint against Sunshine Mills (hereinafter referred to as "Defendant"). Defendant filed a Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement on February 8, 2012, in which the court denied, but granted the defendant's Motion for a More Definite Statement. This required the plaintiff to file an Amended Complaint on or before March 16, 2012. On March 5, 2012 the plaintiff filed his first Amended complaint asserting his claims for relief and was entered in the court under a new case number (3:11-CV-04271-CLS), which was, [sic] assigned to Magistrate-Judge Robert R. Armstrong, but reassigned to Judge Lynwood Smith, Jr., who closed the case, and dismissed the amended complaint and all claims asserted within, without prejudice. On March 16, 2012, the defendant entered a Motion to Dismiss with the same amended case, and the claims asserted

---

[23] *Id.* at ¶ 29.
[24] Amended Complaint, at ¶ 30.
[25] *Id.* at ¶ 31.
[26] *Id.* at ¶ 32.

8

within, as well. Because the amended complaint was already dismissed along with the closing of the new case by order of the court, all of the defendant's claims and Motions are due to be dismissed.[27]

Plaintiff further states:

> The plaintiff's first amended complaint, and all claims asserted within, were dismissed without prejudice by order of the court. Therefore, the defendant's Motion to Dismiss and all requests and claims against the plaintiff asserted therein, upon the same claims asserted within the amended complaint, lacks standing to be pursued and should therefore be denied.[28]

Contrary to plaintiff's assertions, his amended complaint was never filed in Civil Action No. 3:11-cv-4271-CLS, and, as such, it was never dismissed. The order entered in Civil Action No. 3:11-cv-4271-CLS on March 5, 2012, dismissed plaintiff's *original* complaint in that case, but it did not affect the *amended* complaint filed in *this* case. Therefore, all of plaintiff's assertions that the viability of his amended complaint already has been determined are without merit.

## B.     First Claim For Relief (42 U.S.C. § 1983)

In his First Claim for Relief, plaintiff alleges a "Civil Rights Violation Under 42 U.S.C. Section 1983." The basis for his claim is that defendant wrongfully removed him from the maintenance crew without providing proof that the individuals who remained on the crew had better credentials than him, and despite the fact that

---

[27] Doc. no. 16 (plaintiff's brief), at 1-2.

[28] *Id.* at 2.

9

plaintiff had years of on-site training and hands-on experience. Although he does not explicitly so state, plaintiff appears to also allege that his removal from the maintenance crew was the result of race discrimination.[29]

Defendant argues that plaintiff's § 1983 claim must be dismissed because it is not a state actor. 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . [emphasis supplied]

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Defendant undisputedly is a private company, and *not* a governmental entity. Even so, plaintiff asserts that defendant may have been "acting under color of state law" for § 1983 purposes at times relevant to his complaint. A private person or entity acts "under color of" state law if his or its "alleged actions are 'fairly attributable to

---

[29] Amended Complaint, at ¶¶ 38-42. Plaintiff cites a case from the United States District Court for the Southern District of Mississippi that dealt with a race discrimination claim, but does not otherwise mention race discrimination in his First Claim for Relief. *See id.* at ¶ 39.

the State.'" *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

> For a defendant's actions to be fairly attributable to the state, "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." [*Lugar*, 457 U.S. at 937]. Mrs. Harvey's complaint survives the first part of the test: her commitment at Charter was made possible by Georgia statute. Her complaint ultimately fails, however, because Charter is no state actor.
>
> Only in rare circumstances can a private party be viewed as a "state actor" for section 1983 purposes. The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test. *NBC v. Communication Workers of America, AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir.1988).

*Harvey*, 949 F.2d at 1130 (footnote omitted) (first bracketed alteration in original, second bracketed alteration supplied).

> The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." *NBC*, 860 F.2d at 1026 (citations omitted). The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC*, 860 F.2d at 1026 (citations omitted). The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *NBC*, 860 F.2d at 1026-27 (citations omitted).

*Willis v. University Health Services, Inc.,* 993 F.2d 837, 840 (11th Cir. 1993)

(bracketed alteration in original).

Plaintiff's amended complaint does not contain any allegations that would support a claim for relief under any of these theories. Instead, the First Claim for Relief in the amended complaint only alleges that defendant discriminated against plaintiff in its private capacity as his employer. Plaintiff's assertion that more discovery is needed to determine whether defendant was acting under color of state law cannot save the claim when there are no supporting allegations in the pleading itself. Accordingly, plaintiff will not be allowed to pursue a §1983 claim against defendant.[30]

Even so, the court concludes that plaintiff's First Claim for Relief should not be dismissed for failure to state a claim upon which relief can be granted. The claim essentially is one for race discrimination and/or retaliation. Plaintiff's choice to plead the claim under § 1983 was inartful and unfortunate, because if he had pled the claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the concerns over defendant not being a state actor would not have been

---

[30] Plaintiff also complains that defendant did not refute the substantive allegations of discrimination he set forth in the First Claim for Relief. No such argument or proof was required, however. As plaintiff acknowledges, "Section 1983 is *not* itself a lawful right, but merely provides a method to invoke rights that are stated in the United States Constitution." Doc. no. 16 (plaintiff's brief), at 3 (emphasis in original). If a plaintiff cannot satisfy all requirements for filing a claim under § 1983 (*e.g.,* if the plaintiff cannot establish that the defendant was acting under color of state law), then the merits of the underlying claim are irrelevant.

applicable. Plaintiff even filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race, and he received a Notice of Right to Sue from the EEOC on October 3, 2011.[31] Because plaintiff is proceeding *pro se*, and because his allegations appear to support a claim for race discrimination and/or retaliation, the court will construe his First Claim for Relief as asserting such claims under Title VII. *See, e.g., Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). As so construed, the First Claim for Relief will survive defendant's motion to dismiss.[32]

## C. Third Claim for Relief (Ala. Code § 13A-9-45)

In his Third Claim for Relief, plaintiff asserts that defendant has falsified business records in violation of Section 13A-9-45 of the Alabama Code. More specifically, plaintiff states:

> 49. That the defendants' actions constitute a willful and knowing violation and depravation of a right secured by the laws of the State of

---

[31] *See* exhibits to doc. no. 1 (original complaint).

[32] Defendant may have other procedural or substantive arguments to make in response to a Title VII claim. Because defendant did not have notice, prior to receiving this Memorandum Opinion and Order, that plaintiff's First Claim for Relief would be construed as a Title VII claim, it will be allowed until April 20, 2012, to file a supplemental motion to dismiss in response to the First Claim *only*. If defendant does not file a motion to supplemental motion to dismiss on or before that date, it must reserve any arguments in opposition to the Title VII claim for summary judgment.

Alabama in violation of title 13A-9-45 and federal laws in conjunction with this act.

50. That the defendant attempted to coerce the plaintiff to sign a document that violates state and federal law as well as falsifying plaintiff's time; and refusing to pay for overtime taken, when the defendant knows that the retention and preservation of keeping employees' time accurate and true are required by law.

51. That the defendant has deprived the plaintiff, the state of Alabama, and the United States of America monies that are due to them.

52. That the plaintiff is entitled to recover from all defendants for actual and punitive damages and/or losses caused by their conduct as set forth in this complaint.

53. That the plaintiff is entitled to seek injunctive relief to have all employee time records, including the plaintiff's, reviewed thoroughly by state and federal auditors, to ensure that such actions by the defendant are not committed in the future.[33]

Section 13A-9-45 of the Alabama Code states, in pertinent part, that

> [a] person commits the *crime* of falsifying business records if, with intent to defraud, he:
>
> > (1) Makes or causes a false entry in the business records of enterprise; or
> >
> > (2) Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise when he knows the retention or preservation of a true entry is required by law independent of this section; or
> >
> > (3) Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be

---

[33] Amended Complaint, at ¶¶ 49-53.

>   imposed upon him by law; or
>
>   (4) Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise when he knows a true entry is required by law independent of this section.

Ala. Code § 13A-9-45 (2005) (emphasis supplied). As is apparent from its plain language, § 13A-9-45 is a *criminal* statute. Plaintiff, as a private citizen, does not possess standing to pursue the criminal prosecution of any other person or entity.

> No citizen has a right to institute a criminal prosecution. *Linda R. v. Richard V.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed.2d 536 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964) (allowing a private individual to initiate a criminal prosecution would circumvent the legal safeguards provided for persons accused of crime, such as arrest by an officer on probable cause or pursuant to a warrant, prompt presentment for preliminary examination by a United States Commissioner or other officer empowered to commit persons charged with offenses against the United States, and indictment by a grand jury.).

*United States ex rel. Stolls v. Martin,* No. 3:06CV179/MCR/MD, 2006 WL 1883439, at *3 (N.D. Fla. July 7, 2006). Even if plaintiff did have standing to pursue a criminal prosecution, a civil lawsuit would not be the proper forum. For these reasons, plaintiff's Third Claim for Relief is due to be dismissed for failure to state a claim upon which relief can be granted.

**D.     Fourth *and Sixth* Claims for Relief (Defamation and Defamation *Per Se*)**

   For his Fourth Claim for Relief, which he entitles "Defamation of Character,"

plaintiff states:

> 55. That the false claims submitted against the plaintiff by the defendant to the State of Alabama Department of Industrial Relations caused a negative impact on the plaintiff by not allowing him to receive any benefits.
>
> 56. That the malicious actions imposed upon the plaintiff by the defendant has caused a negative impact by suffering financial losses as a result of the plaintiff's dismissal and loss of unemployment benefits.
>
> 56. That the plaintiff is entitled to recover from all defendants for punitive damages and/or losses caused by their conduct; even punitive damages for each day the statement exists in the plaintiff's personnel files and records in the Department of Industrial Relations, for as long as the statements continue to defame the plaintiff.[34]

For his Sixth Claim for Relief, which he entitles "Defamation *Per Se*," plaintiff states that he "is entitled to recover from all defendants for punitive damages caused by their conduct as set forth in this complaint."[35]

Defendant argues that it is protected from plaintiff's defamation claims by § 25-4-116 of the Alabama Code, which provides that, in the context of claims for unemployment compensation with the Alabama Department of Industrial Relations,

> [a]ll letters, reports, communications, and other matters, written or oral, from employer or employee to each other or to the director or any of his agents, representatives, or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered, or made in connection with the requirements and

---

[34] *Id.* at ¶¶ 55-57.

[35] *Id.* at ¶ 70.

>administration of this chapter, shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court.

Ala. Code § 25-4-116 (2007). Indeed, the Eleventh Circuit has held that, because of the privilege established by § 25-4-116, a plaintiff cannot rely upon statements made at unemployment compensation hearings to support a claim for defamation under Alabama law. *See Watters v. Louisiana Pacific Co.,* 156 F. App'x. 177, 179 (11th Cir. 2005). *See also Smith v. Boyd Brothers Transportation, Inc.,* 406 F. Supp. 2d 1238, 1246 (M.D. Ala. 2005) ("BBT's representations to the Alabama Department of Industrial Relations, that Smith was employed and on family medical leave, are privileged under 1975 Ala. Code § 25-4-116."). Plaintiff's argument — that more discovery is warranted to determine what communications were made to the Department of Industrial Relations — is unavailing because the statute provides that *all* communications are privileged. *See also Smith,* 406 F. Supp. 2d at 1246 (holding that the privilege established by § 25-4-116 is absolute). Accordingly, plaintiff's Fourth and Sixth Claims for Relief are due to be dismissed for failure to state a claim upon which relief can be granted.[36]

### E.     **Fifth Claim for Relief (Fraud)**

For plaintiff's Fifth Claim for Relief, he states:

---

[36] The court can discern no reason why the same arguments should not apply to plaintiff's claim for defamation and his claim for defamation *per se*.

59. That the defendants' actions constitute a willful and knowing violation and depravation of trust against the plaintiff and the state of Alabama.

60. That employees have no access to administrative records or documents except for the administrative or executive employees of the defendant.

61. That full-time employees use a proprietary hand scanning system that requires all employees to input their specifically designated 4-pin digits before scanning their hands. Only temporary workers have timecards. Both are inaccessible and are periodically checked by the administrative or executive employees of the defendant.

62. The hand scanning system is a preventive measure to keep full time employees from falsifying their time. All full time employees' time are sent to a computer at the payroll personnel office at the same moment when their hand is scanned. Administrative access is required to change or alter time, at which the plaintiff does not have access to. Only the defendant.

63. That the defendants' vice president, Royal Witcher, terminated the plaintiff for violating the company policy without sufficient evidence to support his claim, but falsifying documents and timecards was not the reason for the dismissal.

64. That the defendant submitted a fraudulent claim to the Department of Industrial Relations that the defendant falsified documents and timecards when the defendant knows that the plaintiff does not have administrative access to such files.

65. That the defendant has neither submitted no evidence nor presented such documents before neither the plaintiff nor industrial relations to state that their claims were fact and true.

66. That the defendant's actions towards the plaintiff and the state of Alabama were malicious and deceptive.

  67. That the defendant violated public policies set forth by the United States of America and the state of Alabama.

  68. That the plaintiff is entitled to recover from all defendants for actual and punitive damages and/or losses caused by their conduct as set forth in this complaint.[37]

Defendant argues that this claim is due to be dismissed because plaintiff has not pled all of the requisite elements of a fraud claim. Under Alabama law, "[t]he elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on *by the plaintiff* under the circumstances, and (4) that caused damage as a proximate consequence." *McCutchen Co. v. Media General, Inc.,* 988 So. 2d 998, 1001 (Ala. 2008) (emphasis supplied) (citations omitted). In this case, plaintiff alleged that defendant maliciously made false statements *to the Department of Industrial Relations*, and *that entity* subsequently relied upon defendant's statements in making its decision to deny plaintiff's unemployment benefits. There is no allegation that *plaintiff* actually relied on any false statements made by defendant. Accordingly, plaintiff's Fifth Claim for Relief does not include facts to support an essential element of a fraud claim, and it is due to be dismissed for failure to state a claim upon which relief can be granted.

## V. CONCLUSION AND ORDER

---

[37] Amended Complaint, at ¶¶ 59-68.

In accordance with the foregoing, defendant's motion to dismiss plaintiff's First, Third, Fourth, Fifth, and Sixth Claims for Relief is GRANTED in part. Counts Three, Four, Five, and Six of plaintiff's amended complaint are DISMISSED with prejudice. Only plaintiff's First and Second Claims for Relief, for violations of Title VII and the Fair Labor Standards Act, remain pending.

DONE this 10th day of April, 2012.

_____
United States District Judge