FILED



2013 Feb-04  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **DONALD J. HUDDLESTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | **3:11-cv-04329-CLS** |
| | ) | |
| **SUNSHINE MILLS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

## DEFENDANT SUNSHINE MILLS, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

E. Britton Monroe (MON032)
Taffi S. Stewart (SMI171)
Lloyd, Gray, Whitehead & Monroe, P.C.
2501 20th Place South, Suite 300
Birmingham, Alabama 35223
Phone:  (205) 967-8822
Fax:  (205) 967-2380
bmonroe@lgwmlaw.com
tstewart@lgwmlaw.com

Attorneys for Sunshine Mills, Inc.

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................1

II.   **STATEMENT OF UNDISPUTED MATERIAL FACTS**.......................2

     A.    Background...............................................................2

     B.    Sunshine's Policies and Practices.......................................3

     C.    Mr. Huddleston ........................................................5

     D.    Mr. Huddleston's Opportunity in Maintenance ..................................6

     E.    Mr. Huddleston's Overtime Claim and Violation of the Clock-In Policy.......................................................9

     F.    Mr. Huddleston's Termination ...........................................12

III.  **ARGUMENT**...................................................................14

     A.    There Is No Evidence Sunshine Discriminated Against Mr. Huddleston On The Basis of Race.......................................14

           1.    There is not substantial evidence to support a prima facie case...................................................15

           2.    Sunshine had a legitimate, non-discriminatory reason to remove Mr. Huddleston from maintenance.........................18

           3.    There is no evidence of pretext..................................19

     B.    Sunshine Did Not Fail To Pay Mr. Huddleston Overtime.................20

     C.    There Is No Evidence To Support Mr. Huddleston's Retaliation Claim.......................................................23

           1.    Mr. Huddleston did not engage in protected activity........................................................23

i

　　　2.　　There is no evidence of pretext..................................................24

**IV.　CONCLUSION.**............................................................................................25

**CERTIFICATE OF SERVICE**............................................................................27

# I.    __INTRODUCTION.__

Plaintiff Donald Huddleston ("Mr. Huddleston"), an African-American and former employee of Sunshine Mills, Inc. ("Sunshine"), contends Sunshine discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., ("Title VII"), when it removed him from a maintenance position.    (Doc. 11, First Claim for Relief).  Mr. Huddleston also contends Sunshine violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime wages and terminating him in retaliation for complaining about Sunshine reducing his hours. (Doc. 11, Second Claim for Relief).[1]

Sunshine is entitled to summary judgment with regard to Mr. Huddleston's discrimination claim because Mr. Huddleston cannot present substantial evidence to establish that (1) he was qualified for the maintenance position, (2) he suffered an

---

[1] Mr. Huddleston, a pro se Plaintiff, filed his original Complaint in December 2011.  (Doc. 1).  On February 8, 2012, Sunshine filed a Motion to Dismiss, or, in the Alternative, Motion for More Definite Statement.  (Doc. 6).  On February 24, 2012, the Court granted Sunshine's Motion for More Definite Statement.  (Doc1. 10).  On March 5, 2012, Mr. Huddleston filed his First Amended Complaint.  (Doc. 11).  Mr. Huddleston asserted claims for  discrimination under Title VII (First Claim for Relief); failure to pay overtime and retaliation under the FLSA (Second Claim for Relief); falsification of business records in violation of Alabama Code § 13A-9-45 (Third Claim for Relief); defamation (Fourth Claim for Relief); fraud (Fifth Claim for Relief); and defamation per se (Sixth Claim for Relief).  (Doc. 11).  On March 16, 2012, Sunshine filed a Motion to Dismiss Mr. Huddleston's First, Third, Fourth, Fifth, and Sixth "Claims for Relief," (Docs. 12-14).  On April 10, 2012, the Court dismissed Mr. Huddleston's Third, Fourth, Fifth and Sixth Claims for relief.  (Doc. 17).  On April 20, 2012, Sunshine filed a Supplemental Motion to Dismiss Mr. Huddleston's Title VII retaliation claim.  (Doc. 18).  In response, Mr. Huddleston acknowledged he never intended to assert a Title VII retaliation claim.  (Doc. 19).

adverse employment action when he was removed,   or (3) similarly situated employees outside his protected class were treated more favorably than he was treated. Moreover, Sunshine had a legitimate, non-discriminatory reason to remove Mr. Huddleston which Mr. Huddleston cannot refute.

Sunshine is entitled to summary judgment with regard to Mr. Huddleston's overtime claim because Mr. Huddleston has failed to present substantial evidence he was not paid for all overtime he worked.  Sunshine is entitled to summary judgment with regard to Mr. Huddleston's retaliation claim because Mr. Huddleston cannot establish substantial evidence to support he engaged in a protected activity or that Sunshine's reason for terminating him was a pretext for retaliation.

## II.   <u>STATEMENT OF UNDISPUTED MATERIAL FACTS.</u>

### A.   **Background.**

1.   Sunshine operates a pet food and treat manufacturing plant in Red Bay, Alabama.  (Declaration of Janeice Gober ("Gober Dec."), filed as Exhibit 1, ¶ 2-3).

2.   Mr. Huddleston worked for Sunshine as a machine operator.  (Deposition of Donald Huddleston ("Huddleston Depo."), filed as Exhibit 2, pp. 93:19-23; Gober Dec., ¶ 3).

3.   Royal Witcher ("Mr. Witcher") is the Chief Operating Officer at

Sunshine. (Huddleston Depo., pp. 58:17-59:2; Gober Dec., ¶ 4; Declaration of Royal Witcher ("Witcher Dec."), filed as Exhibit 3, ¶ 2).

4.    Dave Norton ("Mr. Norton") was Sunshine's Plant Manager, and Addison Deaton ("Mr. Deaton") was Sunshine's Assistant Plant Manager during Mr. Huddleston's employment. (Huddleston Depo., pp. 228:15-17, 343:5-10; Gober Dec., ¶ 4).

5.    Terry Childers ("Mr. Childers") and Jon McKinney were Maintenance Supervisors during Mr. Huddleston's employment. (Huddleston Depo., p. 228:15-17, 342:19-343:1; Gober Dec., ¶4;  Declaration of Jon McKinney ("McKinney Dec."), filed as Exhibit 4, ¶ 2, Gober Dec., ¶ 4 ).

6.    Tammy Humphres ("Ms. Humphres") served as Sunshine's Plant Superintendent in 2010.  (Gober Dec., ¶ 4).

7.    Deanette Sharp ("Ms. Sharp") is Sunshine's Plant Administrator who administers Sunshine's payroll.  (Huddleston Depo., p. 306:14-16; Declaration of Deannette Sharp ("Sharp Dec."), filed as Exhibit 5, ¶ 2).

8.    Janeice Gober ("Ms. Gober") is Sunshine's Human Resources Manager. (Huddleston Depo., 233: 14-19; Gober Dec., ¶ 2).

**B.    Sunshine's Policies and Practices.**

9.    Most of Sunshine's employment policies are set forth in its "Policy

Guidelines for Sunshine Mills, Inc."  (Policy Guidelines, filed as Exhibit 6; Gober Dec., ¶ 10).

10.    Sunshine provides its Policy Guidelines to all employees when they are hired and when they are updated.  (Gober Dec., ¶ 10).

11.    Mr. Huddleston received, read and understood Sunshine's Policy Guidelines.  (Huddleston Depo., pp. 218:22-220:9).

12.    Mr. Huddleston knew he was required to conform to Sunshine's policies and that Sunshine had the right to change its policies during his employment. (Huddleston Depo., pp. 79:4-21, 213:7-19, 218:22-220:9).

13.    Sunshine's Policy Guidelines contain an equal employment opportunity policy that prohibits discrimination on the basis of race, among other things. (Huddleston Depo., pp. 223:6-224:19; Employee Handbook, p. 3).

14.    Sunshine's Policy Guidelines also contain an open door policy allowing employees to voice their concerns without fear of reprisal.  (Employee Handbook, p. 4; Gober Dec., ¶ 10; Huddleston Depo., pp. 224:20-225:22).

15.    Sunshine's hourly employees, including its machine operators, are required to clock in and out each day using a hand scanner system.  (Huddleston Depo., p. 129:6-15; Gober Dec., ¶ 12).

16.    Sunshine allows employees to clock in up to seven minutes prior to the

4

start of their shifts to ensure they are at their assigned work stations at the start of their shifts.   (Huddleston Depo., pp. 322:4-323:4; December 7, 2010 Memo, filed as Exhibit 7; Witcher Dec. ¶ 4; Sharp Dec., ¶ 4).

17.    In addition to clocking in and out, machine operators  are  required  to submit  daily  production  sheets  which  document  the  quantity  and  type  of  feed produced on each shift and the number of hours each employee worked.  (Huddleston Depo., pp. 94:20-106:16; Gober Dec., ¶ 12; Sharp Dec., ¶ 7).

18.    Sunshine uses the production sheets and the time swipes  to  determine how many hours per day an employee worked.  (Gober Dec., ¶ 12; Sharp Dec., ¶ 3, ¶ 7).

19.    Sunshine has a policy prohibiting employees from  working  overtime without prior approval. (Gober Dec., ¶ 11; Huddleston Depo., pp. 75:8-78:4, 82:3-13, 83:19-23, 361:13-21).[2]

20.    Sunshine employees obtain approval to work overtime by having their supervisor complete an overtime slip.  (Gober Dec., ¶ 11; Huddleston Depo., pp. 361:13-21; December 7, 2010 Memo).

**C.    Mr. Huddleston.**

21.    Mr. Huddleston, an African-American, began working for Sunshine  at

---

[2] Mr. Huddleston understood Sunshine had the right to limit the amount of overtime worked by its employees.  (Huddleston Depo., pp. 307:18-309:23).

its Tupelo, Mississippi facility in October 2006.  (Huddleston Depo., pp. 188:6-10, 195:20-196:1).

22.     In April 2008, Sunshine transferred him to Red Bay when it shut down the production line on which Mr. Huddleston was working.  (Huddleston Depo., pp. 132:9-133:16, 137:13-138:17).

### D.     Mr. Huddleston's Opportunity in Maintenance.

23.     In June 2010, Mr. McKinney asked Mr. Huddleston whether he wanted to try working a maintenance position on a 90-day probationary period.  (Huddleston Depo., pp. 149:16-150:13, 166:4-7, 272:15-23; McKinney Dec., ¶ 3; Statement of Jon McKinney, filed as Exhibit 8).

24.     Mr. McKinney and Mr. Childers had discussed Mr. Huddleston and agreed they should try him in the position.  (McKinney Dec., ¶ 3; Statement of Terry Childers, filed as Exhibit 9).

25.     Mr. Huddleston had never worked in maintenance for any employer. (Huddleston Depo., pp. 27:11-28:9, 31:7-32:16).

26.     Mr. Huddleston understood he was not guaranteed a maintenance position after his trial run.  (Huddleston Depo., pp. 149:19-150:1, 273:1-5).

27.     He understood his assignment was temporary at best. (Huddleston Depo., pp. 149:19-150:1, 273:1-5).

28.     A full-time position in maintenance at Sunshine required the ability to maintain, service and use all machinery utilized at the facility.  (Huddleston Depo., pp. 171:16-21, 243:4-244:17; McKinney Dec., ¶ 4).

29.     Mr. Huddleston admits that neither his pay nor his job title changed during his trial run in maintenance.  (Huddleston Depo., p. 273:6-21).

30.     On or about August 11, 2010, Mr. Childers and Mr. McKinney informed Mr. Huddleston that he could no longer work in maintenance because he lacked the requisite experience, he performed his duties slowly, and he was limited with regard to what machines he could operate, service or repair.  (Huddleston Depo., pp. 145:12-146:13, 340:13-341:10; Statement of Terry Childers; Statement of McKinney; McKinney Dec., ¶s 5-7).

31.     Mr. McKinney participated in the decision to remove Mr. Huddleston from maintenance, and the only reasons for the decision were his slow performance, lack of experience and lack of knowledge regarding the machines.  (McKinney Dec., ¶ 7).

32.     Mr. Huddleston has never known Mr. McKinney to be dishonest. (Huddleston Depo., pp. 237:1-238:4).

33.     Mr. Huddleston does not dispute he lacked the necessary knowledge, training, and experience to maintain all of Sunshine's machinery.  (Huddleston Depo.,

pp. 17:12-20:9, 141:10-142:19, 145:12-146:13, 170:5-171:21, 174:9-13).[3]

34.    Mr. Childers told Mr. Huddleston that Sunshine would reconsider him for the position if he went "back to school and [got] more experience."  (Huddleston Depo., pp. 145:12-146:13).

35.    Mr. Huddleston admits Mr. Childers doubting his experience and qualifications had nothing to do with his race; he simply thinks Mr. Childers should have had a "stronger" reason to remove him.  (Huddleston Depo., pp. 158:7-160:11, 253:10-21).[4]

36.    Mr. Huddleston agrees that if Mr. Childers participated in the decision to try him out in maintenance, Mr. Childers could not have had a problem with his race. (Huddleston Depo., p. 269:2-10).

37.    Mr. Huddleston returned to his machine operator position on or around August 23, 2010.  (Huddleston Depo., pp. 93:19-23, 141:10-12, 274:5-9).

38.    Mr. Huddleston did not utilize Sunshine's "Open Door Policy" to contest his removal from maintenance.  (Huddleston Depo., pp. 226:9-230:1).

39.    Mr. Huddleston does not dispute Sunshine removed Bill Bowling and

---

[3] Mr. Huddleston could not name all the machines on the pupcorn line.  (Huddleston Depo., pp. 155:20-156:19).

[4] Mr. Huddleston also agrees Mr. Childers was entitled to rely on reports from Mr. Childers's subordinates regarding Mr. Huddleston's performance instead of his own personal observations. (Huddleston Depo., 165:17-166:3, 185:4-7).

Joseph Duncan, two Caucasian employees, from probationary positions in maintenance due to poor work performance. (Huddleston Depo., 176:4-177:23, Gober Dec., ¶s 8-9).

### E. Mr. Huddleston's Overtime Claim and Violation of the Clock-In Policy.

40.    Mr. Huddleston worked the first shift on the pupcorn production line, which began at 7:00 a.m. and ended at 3:00 p.m.  (Huddleston Depo., pp. 65:18-22, 92:7-19, 102:3-9, 305:19-306:13).

41.    Mr. Huddleston believes Sunshine failed to pay him overtime during the time period August 30, 2010 through December 22, 2010.  (Huddleston Depo., p. 280:13-22).

42.    Mr. Huddleston's Time Swipe Report for this period of time shows he clocked in on 90 days.  (Sharp Dec., ¶ 4).

43.    With regard to this 90-day period, Mr. Huddleston clocked in (1) 19 days before 5 a.m.; (2) 25 days before 6 a.m.; and (3) 46 days after 6 a.m. but well before 7 minutes before the start of his shift (6:53 a.m.).  (Sharp Dec., ¶ 4).

44.    Mr. Huddleston admits he came to work several minutes (sometimes hours) before the start of his shift, clocked in, returned to his truck and sat in his truck to "rest up" until his shift started at 7:00 a.m.  (Huddleston Depo., pp. 290:13-291:21, 343:11-344:10).

45.     Mr. Huddleston admits he should not have been paid for the time he spent in his truck or not working.  (Huddleston Depo., pp. 343:11-344:10).

46.     Mr. Huddleston admits he had no need to clock in early, and the start of his shift is when he needed to begin work.  (Huddleston Depo., pp. 310:1-3, 322:19-327:16).

47.     Mr. Huddleston admits no one ever asked him to report to work at 5 or 6 a.m. and he was never asked to work overtime.  (Huddleston Depo., p. 326:9-14).

48.     Mr. Huddleston admits the production sheets completed by the machine operators accurately reflect the hours he actually worked.  (Huddleston Depo., pp. 313:9-314:19; 332:3-16).

49.     Mr. Huddleston admits Sunshine should have relied on his production sheets for an accurate count of his hours.  (Huddleston Depo., p. 332:17-21).

50.     Mr. Huddleston admits his production sheets do not match the entries on his Time Swipe Record.  (Huddleston Depo., p. 331:12-23).[5]

51.     Mr. Huddleston was paid consistent with his production records.  (Sharp Dec., ¶s 7-9).

52.     Mr. Huddleston does not have any records or notes showing when he

_____

[5] During Mr. Huddleston's deposition, he was shown the Time Swipe Report, his production sheets for certain days and his payroll records.  (Huddleston Depo., pp. 281:12-286:11, 286:12-289:1, 300:14-301:5, 310:16-22, 312:7-313:8).  He admitted his payroll records indicate he was paid consistent with his production sheets on these days.  (See id.).

should have been paid overtime. (Huddleston Depo., pp. 316:8-18, 338:19-339:2).

53.     Between August 2010 and his termination in December 2010, Mr. Huddleston remembers being counseled regarding his clock in practices on at least two occasions prior to December 2010:  (1)  Ms. Humphres, the Superintendent, and Ms. Sharp, the Plant Administrator, talked to him sometime in August 2010 and told him he would not be paid based on his clock in time since he did not perform work and his shift had not started; and (2) Mr. Deaton and Mr. Norton told him to stop clocking in early sometime in September 2010. (Huddleston Depo., pp. 292:4-14, 307:18-309:5, 327:17-330:23).

54.     Despite being told to stop clocking in early, Mr. Huddleston continued to do it.  (Huddleston Depo., pp. 310:8-312:16, 318:20-319:7, 321:8-17).

55.     Mr. Huddleston admits he never explained  why he was clocking in so early.  (Huddleston Depo., pp. 319:22-320:21).

56.     On or about December 15, 2010, Mr. Norton distributed a Memorandum to all production employees regarding Sunshine's clock in/clock out procedures. (Huddleston Depo., pp. 63:11-64:7, 331:8-11; December 7, 2010 Memo).

57.     The Memo provided that employees must not clock in before seven minutes prior to the start of their shift.  (December 7, 2010 Memo).

58.     Mr. Huddleston admits he understood the memo but refused to sign it. (Huddleston Depo., pp. 63:4-64-7, 66:15-22, 69:23-70:21).

59.     Mr. Huddleston does not know of any other Sunshine employee who refused to sign the Memo.  (Huddleston Depo., p. 375:18-22).

60.     Mr. Huddleston cannot provide the name of any machine operator who clocked in when he did.  (Huddleston Depo., pp. 323:13-325:16).

61.     Throughout the time Mr. Huddleston contends Sunshine altered his time, his complaint was that Sunshine changed his time, not that Sunshine was not compensating him for time he actually worked.   (Huddleston Depo., pp. 58:11-59:15, 75:8-76:12, 84:6-16, 215:12-21, 230:8-13, 308:9-310:3, 319:12-321:7, 322:5-18, 331:2-4, 336:22-337:5, 352:13-353:1).

### F.     Mr. Huddleston's Termination.

61.     On or about December 16, 2010, Mr. Witcher, the Chief Operating Officer, and Mr. Norton met with Mr. Huddleston to address Mr. Huddleston's refusal to sign the Memo and his violation of policy.  (Huddleston Depo., pp. 59:16-60:10; 232:6-12; Witcher Dec., ¶ 5).

62.     Mr. Witcher reviewed the clock in procedures from the Memo with Mr. Huddleston.  (Huddleston Depo., pp. 61:15-62:5; Witcher Dec., ¶ 5).

63.     Mr. Huddleston again refused to sign the Memo.  (Witcher Dec., ¶ 5).

64.     Mr. Huddleston continued to clock in early after his meeting with Mr. Witcher.  (Huddleston Depo., p. 368:6-11; Witcher Dec., ¶ 6).

65.     Mr. Witcher terminated Mr. Huddleston on December 21, 2010 and told him, "[Y]ou have continued to clock in at 6:30 so I'm terminating you for violating company policy." (Huddleston Depo., pp. 365:10-366:2).

66.     Mr. Huddleston admits that what Mr. Witcher said was correct, and he does not have any reason to believe that Mr. Witcher did not think what Mr. Huddleston was doing was wrong.  (Huddleston Depo., p. 366:3-16).

67.     Sunshine's termination notice to Mr. Huddleston provides:

> repeated violation of company time clock policy stating employee not to clock in before 7 minutes prior to start of shift UNLESS authorized to do so by immediate supervisor or management to cover shortages in shift coverage.  In that event, must turn in approved overtime request form.

(Huddleston Depo., 108:16-18, 231:21-23, 361:3-366:2, 365:10-366:2; Termination Notification attached as Exhibit 10; Witcher Dec., ¶ 8).

68.     Mr. Huddleston agrees he was an at-will employee and Sunshine could terminate him for any reason, with or without cause.  (Huddleston Depo., pp. 79:22-80:11, 221:17-222:6).

69.     Mr. Huddleston admits Mr. Witcher never told him he was being terminated because he complained of an FLSA violation or anything else.  (Huddleston Depo., pp. 360:21-361:2).

70.   Mr. Huddleston wants "justice" and "8 million dollars" from Sunshine. (Huddleston Depo., pp. 337:12, 344:13-15).

## III.   ARGUMENT.

### A.   There Is No Evidence Sunshine Discriminated Against Mr. Huddleston On The Basis Of Race.

Mr. Huddleston asserts Sunshine discriminated against him on the basis of his race when it moved him from maintenance back to machine operator in the Summer of 2010.  To prove this, Mr. Huddleston must present substantial evidence sufficient to show (1) he was a member of a protected class; (2) he was qualified for the maintenance position; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated employees outside his protected class.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1078 (11th Cir. 2004); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1977).[6]  If Mr. Huddleston establishes a prima facie case of discrimination, Sunshine must present a legitimate, non-discriminatory reason for its decision to return him to the machine operator position.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).  Once Sunshine proffers a legitimate, non-discriminatory reason, Mr. Huddleston bears the burden of presenting substantial

---

[6] Mr. Huddleston does not contend there is direct evidence of discrimination.  As such, he must prove his claim based on circumstantial evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

evidence that Sunshine's reason for returning him to maintenance was a mere pretext for discrimination.  See id.; Moulds v. Wal-Mart Stores, Inc., 935 F.2d 252, 256-57 (11th Cir. 1991).

### 1.    There is not substantial evidence to support a prima facie case.

Mr. Huddleston cannot establish a prima facie case because he cannot present substantial evidence to support he was qualified,  subjected to an adverse employment action, or treated less favorably than similarly situated employees outside his protected class.

To be qualified for a maintenance position at Sunshine, an employee must be able to maintain, service and operate all machinery at the facility.  (McKinney Dec., ¶ 4). Mr. Huddleston does not dispute this. (Huddleston Depo., pp. 171:16-21, 243:4-244:17).  Mr. Huddleston also does not dispute he did not meet the requirements. (Huddleston Depo., pp. 17:12-20:9, 141:10-142:19, 145:12-146:13, 170:5-171:21, 174:9-13).[7]  As such, Mr. Huddleston cannot demonstrate he was qualified for the maintenance position, and his prima facie case fails.  See Paul v. Americold Logistics, LLC, 450 Fed. Appx. 850, 853 (11th Cir. 2012) (finding that the plaintiff was

---

[7] Mr. Huddleston admits he had never before worked as a maintenance employee, had very limited formal training or education, and did not have any licenses or certifications that would allow him to practice any particular trades, including mechanics, welding, or machine maintenance. (Huddleston Depo., pp. 17:12-20:9, 22:5-9, 27:11-28:9, 31:7-32:16, 141:10-142:19, 145:12-146:13, 170:5-171:21, 174:9-13).

unqualified); Welch v. Mercer Univ., 304 Fed. Appx. 834, 836-37 (11th Cir. 2008) (finding the plaintiff could not establish a prima facie case because she "clearly" lacked the qualifications for the position sought);   see also Davis v. Dallas Indep. School Dist., 448 Fed. Appx. 485, 491 (5th Cir. 2011) (finding that plaintiff could not establish a prima facie case because she did not possess qualifications required for the job).[8]

Even if Mr. Huddleston was qualified, his removal from the maintenance position did not constitute an adverse employment action.  To constitute an adverse employment action, Mr. Huddleston's removal from maintenance must have resulted in "a serious and material change in the terms, conditions, or privileges of employment to establish an adverse employment action."  Hyde v. K.B. Home, Inc., 355 Fed. Appx. 266, 269 (11th Cir. 2009) (quoting Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001)); Crawford v. Carroll, 529 F.3d 961 (11th Cir. 2008)).   Removing an employee from a provisional appointment or reassigning an employee does not constitute an adverse employment action.  See Morton v. Astrue, 380 Fed. Appx. 892, 894-95 (11th Cir. 2010) ("the reassignment of [a plaintiff's] duties did not constitute an adverse employment action" where it was accompanied

---

[8]  Moreover, Mr. Huddleston's opinion that he was qualified is insufficient to establish that he met Sunshine's qualifications.  See Austin v. Progressive RSC, Inc., 265 Fed. Appx. 836, 845 (11th Cir. 2008); Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006); Cooper v. Southern Co., 390 F.3d 695, 743 (11th Cir. 2004) (overruled on other grounds).

by no tangible harm such as a decrease in pay") (quoting <u>Davis</u>, 245 F.3d at 1239));
<u>Sampath v. Immucor, Inc.</u>, 271 Fed. Appx. 955, 962 (11th Cir. 2008) (finding that
because the employee's salary, pay and benefits remained the same, there was no
adverse employment action).

 Mr. Huddleston admits Sunshine placed him in maintenance on a trial basis,
Sunshine never guaranteed him the position, and he did not expect to stay in
maintenance on a full-time basis. (Huddleston Depo., pp. 149:16-150:13, 166:4-7,
272:15-273:5). As such, removing him from a position he did not expect to hold long-
term was not an adverse action. <u>See</u> <u>Morton</u>, 380 Fed. Appx. 894. Moreover, Mr.
Huddleston admits his salary did not change when Sunshine placed him in
maintenance or when he returned to the operator position. (Huddleston Depo., p.
274:5-9). Because Mr. Huddleston's removal amounted to nothing more than a
reassignment, he did not suffer an adverse employment action.

 Even if Mr. Huddleston's removal constituted an adverse employment action,
Mr. Huddleston cannot establish that Sunshine treated similarly situated employees
outside his protected class more favorably than it treated him. <u>See</u> <u>e.g.</u> <u>Maniccia v.</u>
<u>Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999) (setting forth the standard for similarly
situated as "nearly identical"). Mr. Huddleston does not dispute Sunshine also
removed Bill Bowling and Joseph Duncan, two Caucasian employees, from

maintenance positions and returned them to operator positions based on their poor performance in maintenance. (Huddleston Depo., pp. 176:4-177:23; Gober Dec., ¶s 8-9). As such, Sunshine treated similarly situated employees outside Mr. Huddleston's class the same as it treated him. See e.g. As-Salaam v. NYC Dept. Of Parks and Rec., Case No. 1:02-cv-5646-ENV-LB, 2007 U.S. Dist. Lexis 53584, at *17-19 (S.D.N.Y. Jul. 24, 2007) (finding the fact that plaintiff's white colleague's removal from the same provisional position as the plaintiff "actually points to the opposition conclusion" than asserted by the plaintiff).

### 2. Sunshine had a legitimate, non-discriminatory reason to remove Mr. Huddleston from maintenance.

Even if Mr. Huddleston could establish a prima facie case, Sunshine had a legitimate, non-discriminatory reason to remove him from the position, i.e. he performed poorly based on being slow and lacking the requisite knowledge to operate and maintain all machines on the floor. (Huddleston Depo., pp.145:12-146:13, 340:13-341:10; Statement of Childers; Statement of McKinney; McKinney Dec., ¶s 5-7).

### 3. There is no evidence of pretext.

Mr. Huddleston cannot establish Sunshine's legitimate, non-discriminatory reason was pretextual. There is no evidence to demonstrate: (1) Sunshine's legitimate, non-discriminatory reason should not be believed; or (2) Sunshine more likely than

not acted with a discriminatory motive.  See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (setting forth burden of proof for pretext); Standard v. A.B.E.L. Serv., Inc., 161 F.3d 1318, 1332 (11th Cir. 1998) (citing Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir.1996)).  Mr. Huddleston does not dispute he lacked the necessary knowledge, training and experience to work in maintenance or that Mr. Childers believed Mr. Huddleston could not do the job.  (Huddleston Depo., pp. 17:12-20:9, 141:10-142:19, 145:12-146:13, 158:7-160:11, 170:5-171:21, 174:9-13, 253;10-21).  As such, there is no evidence to show Sunshine's reason should not be believed.

Moreover, there is no evidence to show race was a motivating factor in the decision.  Mr. Huddleston does not dispute (1) Mr. Childers participated in the decision to place him in the maintenance position; (2) if Mr. Childers participated in the decision to place him in the position, Mr. Childers could not have had a problem with his race; and (3) Mr. Childers's opinion of his experience and qualifications had nothing to do with his race.  (Huddleston Depo., pp. 158:7-160:11, 253:10-21, 269:2-10).  Based on these facts, Mr. Huddleston admits race had nothing to do with Sunshine's decision.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.)(requiring only that an employer "give an honest explanation" of its assessment of Plaintiff's job performance (citations omitted).  In fact, Mr. Huddleston also

admitted he simply believes Mr. Childers should have had a "stronger" reason to remove him, which is not actionable under Title VII. (Huddleston Depo., pp. 158:7-160:11, 253:10-21).  See Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (employee cannot succeed by simply quarreling with the wisdom of the employer); Elrod, 939 F.2d at 1470 (court does not sit as a super-personnel department).

### B.    Sunshine Did Not Fail To Pay Mr. Huddleston Overtime.

Mr. Huddleston contends Sunshine violated the FLSA by not paying him consistent with his clock-in times. Mr. Huddleston cannot establish Sunshine violated the FLSA because he cannot establish that: (1) he worked overtime for which Sunshine did not compensate him; or (2) Sunshine knew or should have known of the overtime Mr. Huddleston worked.  See Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1314-15 (11th Cir. 2007) (citing Reich v. Dep't of Conservation and Nat. Res., 28 F.3d 1076, 1082 (11th Cir. 1994) and 29 C.F.R. § 785.11).  The FLSA does not require Sunshine to pay Mr. Huddleston for hours he did not work, even if Mr. Huddleston had clocked in.  See 29 C.F.R. § 785.48(a) ("In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work.  Their early or late clock punching

may be disregarded"); <u>Babineau v. Fed. Express Corp.</u>, 576 F.3d 1183, 1192-93 (11th Cir. 2009)(relying on regulation).

Mr. Huddleston admits (1) his shift did not start until 7 a.m.; (2) despite his shift not starting until 7 a.m., he clocked in excessively early on a daily basis; (3) he has no witnesses or evidence to support he was performing work in between the time he clocked in and his shift started; (4) on several days he sat in his truck to "rest up" in between the time he clocked in and his shift started; (5) no other machine operators clocked in when he did; (6) there was no need for him to clock in early; (7) he was counseled by Ms. Sharp, Ms. Humphres, Mr. Norton and Mr. Witcher regarding his need to refrain from clocking in early; (8) he never provided anyone with an explanation that he was working when he clocked in early; and (9) he should not have been paid for time he spent on the clock during which he was not working. (Huddleston Depo., pp. 65:18-22, 92:7-19, 290:13-291:21, 292:4-14, 305:19-306:13, 307:18-309:5, 316:8-18, 319:22-320:21, 322:19-330:23, 338:19-339:2, 343:11-344:10). He also cannot dispute that Ms. Sharp spoke with Mr. Huddleston's supervisors before reducing his time to ensure he was not working prior to the beginning of his shifts and there was no need for him to have clocked in early. (Sharp Dec., ¶s 4-6). Based on this undisputed evidence, Mr. Huddleston was not entitled

to be paid for the time between his clock-in time and the beginning of his shift. <u>See</u> 29 C.F.R. § 785.48(a).

Moreover, Mr. Huddleston cannot present any evidence to show he was not properly paid for the hours he worked, including the overtime hours he worked. Mr. Huddleston admits his production sheets accurately reflected the hours he worked on a given day and that Sunshine was entitled to rely on the production sheets in determining how many hours to pay him. (Huddleston Depo., pp. 313:9-314:19, 331:12-333:1). Mr. Huddleston cannot dispute he was paid consistent with his production sheets or that he was paid for several hours of overtime. (Sharp Dec., ¶s 7-9). As such, there is no evidence, much less substantial evidence, that Sunshine failed to pay him overtime wages to which he was entitled, and Sunshine is entitled to summary judgment. <u>See</u> <u>e.g.</u> <u>Newton v. City of Henderson</u>, 47 F.3d 746 (5th Cir. 1995)[9]; <u>Lewis v. Keiser Sch., Inc.</u>, 11-62176-Civ-SCOLA, 2012 U.S. Dist. Lexis 147150 at *6-7 (S.D. Fla. Oct. 12, 2012) ("the Court is unwilling to attribute to Keiser actual or constructive knowledge of work being performed off the clock, when Lewis's own records indicate otherwise"); <u>Gaylord v. Miami-Dade County</u>, 78 F.

---

[9] Like Mr. Huddleston, the plaintiff in <u>Newton</u> "ignored" the employer's procedures for working overtime and completed his timesheets. 47 F.3d at 749. The time sheets for the plaintiff in <u>Newton</u>, similar to Mr. Huddleston's production sheets, did not include the overtime hours that he claimed to have worked. <u>See</u> <u>id</u>. at 748-50. The plaintiff in Newton did not provide his employer with any information to support he should not have been paid consistent with his time sheets. <u>See</u> <u>id</u>. at 750.

Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.").

### C.   There Is No Evidence To Support Mr. Huddleston's Retaliation Claim.

Mr. Huddleston contends Sunshine retaliated against him in violation of the FLSA when it terminated him.  To establish a prima facie case of retaliation under the FLSA, Mr. Huddleston must present substantial evidence: (1) he engaged in activity protected by the FLSA; (2) he suffered adverse action subsequent to or contemporaneous with the protected activity; and (3) a causal connection exists between his activity and Sunshine's adverse action.  See Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000).  Similar to Title VII, if Mr. Huddleston establishes a prima facie case, Sunshine must proffer a legitimate, non-retaliatory reason for terminating Mr. Huddleston, and if Sunshine satisfies this burden, Mr. Huddleston may attempt to prove pretext.  See id. at 1343.

### 1.   Mr. Huddleston did not engage in a protected activity.

Mr. Huddleston's claim for retaliation fails because he cannot present substantial evidence he engaged in a protected activity.  Mr. Huddleston testified he complained about Sunshine changing his time, not that Sunshine failed to pay him for time he actually worked.  (Huddleston Depo., pp. 58:11-59:15, 75;8-76:12, 84:6-16,

215:12-21, 230:8-13, 308:9-310:3, 319:12-321:7, 322:5-18, 331:2-4, 336:22-337;5,

35:13-353:1).  As such, Mr. Huddleston did not complain of an FLSA violation and

did not engage in a protected activity.

### 2.    There is no evidence of pretext.

Even if there was substantial evidence to support a prima facie case for

retaliation, there is no evidence of pretext.  See Blythewood v. Unisource Worldwide,

Inc., 413 F. Supp. 2d 1367, 1376 (11th Cir. 2006) (holding a plaintiff must establish

that "a [retaliatory] reason more likely motivated" the employer or the employer's

"proffered explanation is unworthy of credence.").   Sunshine terminated Mr.

Huddleston for a legitimate, non-retaliatory reason, i.e. his repeated violation of

Sunshine's clock in policy.  (Huddleston Depo., pp. 365:10-366:16; Witcher Dec., ¶s

6-8).    There is no evidence a retaliatory reason more likely motivated Sunshine in

terminating him.  Mr. Huddleston admits he was instructed to stop clocking in early

on more than one occasion, and he continued to clock in early despite these

instructions.  Mr. Huddleston admits not only that Mr. Witcher (the decisionmaker

with regard to his termination) was correct when he told Mr. Huddleston that he had

continued to clock in early after being told not to do so but also that Mr. Witcher

appeared to believe what Mr. Huddleston was doing was wrong.  (Huddleston Depo.,

pp. 366:3-16).   See Elrod, 939 F.2d at 1470 (employer need not be right, just must

have good faith honest belief the employee committed the conduct); <u>Smith v. Papp Clinic</u>, 808 F.2d 1449, 1452 (11th Cir. 1987).  Mr. Huddleston also admits Mr. Witcher never told him he was being terminated because he complained of an FLSA violation or for any reason other than his violation of the clock in procedure. (Huddleston Depo., pp. 360:21-361:2).

There is also no evidence Sunshine's reason for terminating him was unworthy of belief.  Mr. Huddleston admits Sunshine's policy disallowed him from clocking in prior to seven minutes before his shift and he repeatedly clocked in well in excess of seven minutes before his shift.  (Huddleston Depo., pp. 63:11-64:7, 310;8-312:16, 318:20-319:7, 321:8-17, 331:8-11, 368:6-11).    Because there is no evidence of pretext, Mr. Huddleston's claim for retaliation fails as a matter of law.

## IV.    <u>CONCLUSION.</u>

Mr. Huddleston's claim for race discrimination under Title VII is due to be dismissed because there is no evidence to support a prima facie case, and, even if Mr. Huddleston could establish a prima facie case, there is no evidence1 of pretext.  Mr. Huddleston's claim for overtime wages under the FLSA is due to be dismissed because there is not substantial evidence Mr. Huddleston worked overtime hours for which he was not properly compensated.  Mr. Huddleston's claim for retaliation under

the FLSA is due to be dismissed because he cannot establish he engaged in a protected

activity or substantial evidence to support pretext.

Dated:  February 4, 2013.

Respectfully submitted,

*/s **Taffi S. Stewart***
E. Britton Monroe (ASB-1454-072E)
Taffi S. Stewart (ASB-0450-M72T)
Attorneys for Sunshine Mills, Inc.

OF COUNSEL:
Lloyd, Gray, Whitehead & Monroe, P.C.
2501 20th Place South, Suite 300
Birmingham, Alabama 35223
Phone:  (205) 967-8822
Fax:  (205) 967-2380
bmonroe@lgwmlaw.com
tstewart@lgwmlaw.com

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of February, 2013, a true and correct copy

of the foregoing has been furnished either through the Court's electronic filing or by

U.S. Mail, postage prepaid, upon the following parties and other relevant individuals:

Donald J. Huddleston
50 Weatherspoon Road
Fulton, Mississippi  38843


<u>*/s Taffi S. Stewart*</u>
**OF COUNSEL**